UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STEVEN M. CLARKE and SSD CLARKE
HOLDINGS, INC.,

                        Plaintiffs,                              22-cv-1917 (PKC)

      -against-                                  OPINION AND ORDER

TRIGO U.S., INC. and TRIGO HOLDINGS
S.A.S.,

                      Defendants.
-----------------------------------------------------------x
TRIGO U.S., INC.,

                      Counterclaimant,

      -against-

STEVEN M. CLARKE and SSD CLARKE
HOLDINGS, INC.,

                      Counterclaim Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Ruling on defendants' motion to dismiss, this Court previously upheld the plaintiffs' breach of contract claims against TRIGO U.S. Inc. ("TRIGO") relating to an earn-out provision in an agreement for the sale of a business by plaintiffs to TRIGO. (Opinion and Order of Mar.10, 2023; ECF 37.) The Court did, however, dismiss the claim against TRIGO's corporate parent and also plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. (ECF 37.)

        A year and four months into the action, new counsel appeared on behalf of plaintiffs and sought to amend the complaint as against TRIGO to add as defendants Matthieu

1

Rambaud and Emmanuel Marquis, two French citizens who are individual officers of TRIGO and its corporate parent. Because the body of plaintiffs' complaint mentioned Rambaud 16 times and Marquis 10 times and plaintiffs had been given the opportunity to amend before the motion to dismiss but declined the invitation to do so (ECF 26), the Court ordered plaintiffs to "address what they have learned new since the filing of the action that gives rise to their attempt to amend at this juncture." (ECF 47). While acknowledging the Court-ordered direction, plaintiffs declined to comply, noting that "having learned of new evidence is not required at this stage to satisfy Rule 15(a)(2)." (P. Mem. 12-13.)[1] Faced with defendants' argument that this disobedience warranted denial of the motion, plaintiffs relented in their reply brief: "[f]or the avoidance of doubt, Plaintiffs' motion is not based on any new evidence." (P. Reply Mem.at p7n.1.)

For reasons that will be explained, the Court grants the motion to amend as to combine plaintiffs' two breach of contract claims against TRIGO into a single claim but denies on futility grounds the motion to the extent it seeks to add two fraudulent inducement claims against TRIGO and to join Rambaud and Marquis on those two claims.

BACKGROUND

On August 10, 2018, TRIGO entered into a Purchase and Sale Agreement (the "PSA") with Clarke, SSD, and the other owners of Supplier Management Solutions, LLC ("SMS") to purchase SMS for $58.5 million in cash at closing and two earn-out payments that

---

[1] At no time did plaintiffs seek to vacate or modify the Court's Order. Willful disobedience of a Court's Order, even one with which a party vehemently disagrees, is not a lawful option. United States v. Cutler, 58 F.3d 825, 832 (2d Cir. 1995) (". . . a party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in this Court.").

would be based on the growth of SMS. (Complaint, ¶¶ 3-4, 8-9.) "The first earn-out payment was to be paid to SSD and maxed out at $7.5 million if SMS's normative 2018 earnings before interest, taxes, depreciation, and amortization ('EBITDA') hit $5.8 million." (Id. ¶ 50.) "The second earn-out payment was to be paid to Clarke personally and maxed out at $20 million minus the first earn-out payment. The second earn-out payment maxed out if SMS's normative 2019 EBITDA hit approximately $8.8 million." (Id. ¶ 51.)

The acquisition was intended to combine SMS's supplier management services with the purchaser's quality management services in order to "bring a complete program to the aerospace industry." (See id. ¶¶ 33, 67.) Upon approval of the Committee on Foreign Investment in the United States, the closing took place on January 7, 2019. (Id. ¶ 56.) Clarke signed a separate employment agreement to remain as CEO and president of SMS through December 31, 2019. (Id. ¶ 73.)

The PSA was amended several times after closing to create additional earn-out payments and extend the earn-out period, among other things. (Id. ¶¶ 57, 93-95.) Pursuant to one such amendment, a TRIGO entity paid SSD a $2 million advance for an earn-out that would be based on anticipated revenues during the twelve months ending March 2022. (Id. ¶ 96.) Clarke executed a personal guaranty to reimburse the $2 million if the earn-out payments were less than $2 million. (Id.) In its counterclaim, TRIGO alleges that SSD breached its contractual obligation to repay the $2 million and Clarke breached his personal guarantee of repayment. (ECF 41, at 12-13).

TRIGO made partial earn-out payments of $4 million and $1,275,220 in January 2020 and April 2020, respectively. (Id. ¶ 92; see Proposed Amended Complaint ("PAC") at ¶76.) These payments are not challenged by either side in this action.

The surviving claims in the existing Complaint are two breach of contract claims. The first alleges that TRIGO breached the PSA by failing to provide quality management services as promised and, as a result, forced SMS to divert its own resources to develop such services in-house (the "quality management allegations"), thereby impairing the ability to achieve full earn-out payments. (Complaint ¶ 118.) The second cause of action alleges that TRIGO breached the PSA by requiring SMS to slow down business development in 2021 and by directing SMS to stop pursuing a large contract with L3Harris (the "slow down allegations"), similarly impairing earn-out rights. (Id. ¶¶ 127, 130.)

The Proposed Amended Complaint combines the quality management allegations and the slow down allegations into a single breach of contract claim (PAC ¶¶ 101-102.) It also asserts fraudulent inducement claims against TRIGO and two individual officers, previously not joined, relating to the PSA and the personal guarantee. (PAC ¶¶ 105-121).

I.   STANDARD ON THE MOTION

Except for amendments as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2), Fed. R. Civ. P. Whether to grant leave to amend is addressed to the Court's discretion. Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 553 (2010) ("Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim."). The court should freely give leave when justice so requires. Rule 15(a)(2), Fed. R. Civ. P. Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

The standard governing a claim of futility is comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. Aetna Casualty & Surety Co.

v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005). The party opposing an amendment bears the burden of demonstrating futility. Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514 (PAC)(HBP), 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010).

II.  THE AMENDMENT OF THE PRE-EXISTING BREACH OF CONTRACT CLAIM AGAINST TRIGO WILL BE ALLOWED.

As noted, the PAC combines two previously upheld breach of contract claims against TRIGO—the quality management allegations and the slow down allegations into a single claim for breach of contract. There is no discernible bad faith, dilatory tactic or prejudice to defendant TRIGO in combining the two breach of contract claims into one. This proposed amendment will neither alter the scope of discovery nor result in additional motion practice. While the amendment is arguably unnecessary, it also not prejudicial. The Court will grant leave to amend to assert the First Claim for Relief against TRIGO (PAC ¶¶ 92-104) in lieu of the two separate contract claims in the original Complaint.

III.  LEAVE TO AMEND TO ADD A FRAUDULENT INDUCEMENT CLAIM RELATING TO THE PSA IS FUTILE BECAUSE IT IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM.

The parties entered into the PSA in August 2018, but it was subsequently formally amended five times. Plaintiffs seek to add a fraudulent inducement claim against defendant TRIGO and the two proposed individual defendants relating to the PSA. TRIGO argues that the claim is futile for, among other reasons, (1) it is duplicative of the breach of contract claim; and (2) plaintiffs have failed to allege fraud with the particularity required by Rule 9(b), Fed. R. Civ. P. The Court concludes that the fraudulent inducement claim (Second Claim for Relief)

5

addressed to the PSA is duplicative of the breach of contract claim and is not alleged with the particularity required by Rule 9(b). The amendment will be denied on those grounds. It will be dismissed.

Plaintiffs' breach of contract claim alleges that TRIGO thwarted plaintiffs' efforts to obtain the maximum $20 million in earn-out payments under the PSA as amended by forcing plaintiff to use resources to build a quality management business from the ground up and by requiring the company to slow down business development after it developed the ability to provide quality management services. They allege that they were damaged in a principal amount not less than $12,724,799.60—the amount of the unearned portion of the earn-out payment—plus interest.

The proposed fraudulent inducement claim relies on the content of a slide deck used to "pitch" the transaction in March 2018—about five months before entry into the PSA—in which TRIGO stated that its "mission is to support critical phases in the customer's supply chain by providing **responsive quality management solutions** through a global network of dedicated people." (PAC ¶106(a).)[2] Further plaintiffs allege that, after execution of the PSA but before the closing, the defendants "continued to boast its quality management services to Plaintiffs' customers." (Id. at ¶106(e).) Defendants also assured plaintiffs that it would introduce them to its customers and would protect and support plaintiffs' rights under the earn-out provision. (Id. at ¶106((b)-(e).) They allege that plaintiffs suffered damages, including the loss of the remaining $12,724,799.60 remaining earn-out payment and interest. (Id. at ¶113.)[3]

---

[2] Because it is not addressed in the parties' briefing the Court does not address whether this statement and others are no more than non-actionable puffery.

[3] At paragraph 113 of the PAC, the plaintiffs state that the loss of the remaining earn-out payment is $12,724,700.60, but in their prayer for relief for this cause of action, they state that the amount of the remaining earn-out payment is $12,724,799.60, the amount used throughout the PAC.

To state a claim for fraudulent inducement under New York law, a plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Wall v. CSX Transportation Inc, 471 F.3d 410, 415-16 (2d Cir. 2006) (citing Vermeer Owners, Inc. v. Guterman, 78 N.Y.2d 1114, 1116 (1991)).[4] The Second Circuit has recognized that under New York law "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom International America, Ltd. v. AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation omitted). "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." Id. at 196 (internal quotation omitted).

This is precisely what plaintiffs have done. In the proposed amendment they allege the above referenced representations were false and that defendants "had a preconceived and undisclosed intention not to perform their obligations under the PSA, in order to frustrate Plaintiffs' efforts to achieve the full earn-out" (PAC ¶ 109.)

Contrary to plaintiffs' argument, the fraud alleged is not collateral to the contract. The breach of contract claim alleges that the failure to have a quality management business and requiring the company to slow down business development were breaches of section 3.4(e) of the PSA. Section 3.4(e) provides in relevant part that, until the expiration of the earn-out period

---

[4] The Court previously held that New York law governs because of the choice of law provision in the PSA. (ECF 37, Opinion and Order of March 10, 2023 at 5.)

7

or payment in full of the maximum earn-out payment, TRIGO must operate the company "in good faith and refrain from taking any action with the primary purpose of reducing or eliminating the Earn-Out Payment," (section 3.4(e)(iii)), and must operate the business "consistent with past practice and not adopt strategic, commercial or financial changes to the way [SMS] is managed which could have a negative impact on the EBITDA of [SMS]," (section 3.4(e)(vii)). The representations said to support the fraud claims are subsumed within this provision. As noted, the breach of contract allegations against TRIGO based upon these allegations and the cited provisions of the PSA have been upheld by this Court in its ruling on the motion to dismiss.

    Nor does the circumstance that plaintiffs seek to assert the fraudulent inducement claim against non-parties to the PSA, i.e. the officers of TRIGO, save the claim. Courts applying New York law routinely hold that representations by a non-party made on behalf of the contracting party may be duplicative of the contract claim against the contracting party. See Exchange Listing, LLC v. Inspira Technologies, Ltd., 22 Civ. 1889 (KPF), 2023 WL 2403223, at *16 (S.D.N.Y. Mar. 8, 2023) (collecting cases under New York law) (Failla, J.). "This distinction makes sense. Otherwise, 'plaintiffs could sue the corporation (who was a party to the contract) for breach of contract, and then bring a separate suit for fraud against the individual who represented the corporation, thereby bringing duplicative fraud and breach of contract claims." Id. at 16 (quoting Lefkowitz v. Reissman, 12 Civ. 8703 (RA), 2014 WL 925410, at *5 n.1 (S.D.N.Y. Mar. 7, 2014)). Plaintiffs have expressly alleged that "[a]t all relevant times, Rambaud and Marquis were each acting within the course and scope of their employment at TRIGO." (PAC ¶ 29.)

Because the proposed Second Claim for Relief in the Proposed Amended Complaint is, under New York law, duplicative of the First Claim for Relief for breach of contract, the assertion of the proposed Second Claim would be futile. The Court will address the alternate ground for futility asserted under Rule 9(b) after first addressing the fraudulent inducement claim relating to the guarantee.

IV.  **LEAVE TO AMEND TO ADD A FRAUDULENT INDUCEMENT CLAIM ADDRESSED TO THE GUARANTEE IS FUTILE BECAUSE IT IS BARRED BY THE UNAMBIGUOUS LANGUAGE OF THE GUARANTEE**

In December 2020, TRIGO and plaintiffs entered into a Fifth Amendment to the PSA pursuant to which TRIGO paid plaintiffs a $2 million advance under the earn-out provision in the expectation that plaintiffs would earn at least such amount. (PAC ¶ 115.) Plaintiff Clarke entered into a personal guarantee to payback all or such part of the $2 million advance not actually earned in accordance with the PSA. According to the Proposed Third Claim for Relief, "To induce Clarke to enter into the Personal Guarantee, Defendants represented to him that they would permit Clarke to continue to pursue lucrative business opportunities and contracts with customers, including L3Harris, and would enter into a consulting agreement with someone close to the incoming CEO of L3Harris to help solidify the relationship." (Id. ¶ 117.) These representations are alleged to have been false. (Id. ¶ 119.)

"A guaranty is a promise to fulfill the obligations of another party, and is subject 'to the ordinary principles of contract construction.'" Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro, 25 N.Y.3d 485, 492 (2015) (quoting Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 34 (2d Cir. 1999). "Under New York law, if a contract is straightforward and unambiguous, its

9

interpretation presents a question of law for the court . . . ." Spinelli v. National Football League, 903 F.3d 185, 200 (2d Cir. 2018) (citation omitted).

As will be seen, the guarantee by Clarke is straightforward and unambiguous. It recites that he is "the sole owner of SSD Clarke Holdings, Inc., f/k/a/ Supplier Management Solutions, Inc." ("SMS, Inc.") (ECF 46-1, at 2.) It provides that Clarke "absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the punctual payment, when due, whether at stated maturity, by acceleration or otherwise, of all present and future obligations, liabilities, covenants and agreements required to be observed, performed, or paid by SMS Inc. with respect to" reimbursement of earn-out payments. (Id.) It states that Clarke's obligation with respect to reimbursement is "unlimited" and that "[t]his Guarantee is a guarantee of payment and is absolute." (Id.)

In the guarantee, Clarke expressly waived any defense challenging the validity or enforceability of the guarantee and also any defense premised on "any circumstance," including reliance upon a representation by TRIGO:

> The Guarantor hereby irrevocably waives any defenses it may now or hereafter have in any way relating to any or all of the following:
>
> 2.1 Any lack of validity or enforceability of the Obligations or any agreement or instrument relating thereto.
>
> \* \* \* \*
>
> 2.6 Any other circumstance . . . any existence of or reliance on any representation by Trigo that might vary the risk of the Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of SMS Inc.

Defendants urge that the terms of the guarantee, including the waiver of defenses, is valid and enforceable under New York law. Plaintiffs argue that it is not. Neither side has identified an ambiguity in the language of the guarantee relevant to this motion.

Under New York law, a guarantor's waiver of defenses to a guarantee are routinely enforced by New York courts. See Varadero Master Fund, L.P. v. Gomez, 2023-00099, 2023 WL 6219385, at *1 (App. Div. 1st Dep't. Sept. 26, 2023); Browne & Appel, LLC v. Lichtschein, 2020-08079, 2023 WL 5943733, at *2 (App. Div. 2d Dep't. Sept. 13, 2023); see also Export-Import Bank of U.S. v. Agricola Del Mar BCS, 334 F. App'x 353, 355 (2d Cir. 2009).

Indeed, the New York Court of Appeals has held that an "absolute and unconditional guarantee" is enforceable in the face of a claim of fraud in the inducement. See Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 95 (1985). "Fraud in the inducement of a guarantee by corporate officers of the corporation's indebtedness is not a defense to an action on the guarantee when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee, or any other circumstance which might otherwise constitute a defense available to a guarantor in respect of the guarantee. . . ." Id. at 92. The Second Circuit interpreted Plapinger narrowly in Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315-16 (2d Cir. 1993), contrasting the facts in Yanakas with those in Plapinger noting that the New York court "observed that the guarantee was by no means a generalized boilerplate clause but rather was a 'multimillion dollar personal guarantee' that was signed 'following extended negotiations between sophisticated business people'." Id. at 316 (quoting Plapinger, 66 N.Y. 2d at 95). The Yanakas Court also noted that "[m]ore importantly, the

Yanakas Guarantee does not purport to waive any defenses to its own validity." Id. at 317. "[T]he touchstone" of Plapinger "is specificity. Id. at 316.

The guarantee and surrounding circumstances before this Court are much closer to Plapinger than to Yanakas. Here, Clarke "absolutely, unconditionally and irrevocably" guaranteed a multimillion-dollar ($2,000,000) obligation. Clarke is described in the complaint as "the founder and former chief executive officer, president, and Chairman of the Company." (PAC ¶ 15.) He is also described in the guarantee as the sole owner of the entity with the reimbursement obligation. (ECF 46-1 at 2.) The guarantors in Plapinger were described as officers and directors and owners of all of the voting stock of the entity whose obligation was guaranteed. Plapinger, 66 N.Y. 2d at 92. The guarantee before this Court was by no means a general boilerplate form. Clarke represented that he received and reviewed the PSA that is, itself, a 90-page single-space document to which Clarke in his personal capacity was a party and was represented by counsel. (ECF 29-1 at 79.) The guarantee was executed nearly two years after the closing of the purchase and sale transaction such that Clarke, the continuing CEO of the company that was the subject of the sale, and TRIGO had a mutually-known track record. Unlike Yanakas, Clarke irrevocably waived all defenses to enforcement and the most relevant ones—a claim of lack of validity or enforceability of the guarantee and a claim of reliance upon representations of TRIGO[5]—were specifically mentioned.

District courts applying Plapinger in a post-Yanakas setting have not required any higher degree of specificity to find a defense barred. See Valley National Bank v. Greenwich

---

[5] Paragraph 2.6 of the guarantee, quoted above, is not as narrow as plaintiffs assert. It, indeed, waives any defense premised upon reliance on a representation of TRIGO that would "operate as a defense available to, or a legal or equitable discharge of SMS Inc." But it also waives any defense premised upon a representation of TRIGO "that might vary the risk of the Guarantor [i.e. Clarke]." The thrust of the fraud claim addressed to the guarantee is that the representations were materially false and thus altered the risk of Clarke because they altered his ability to achieve the earn-out, failure of which triggered Clarke's repayment obligation under the guarantee.

Insurance Co., 254 F. Supp. 2d 448, 459 (S.D.N.Y. 2003) (collecting cases); National Westminster Bank PLC v. Empire Energy Mgmt. Sys., Inc., 93 Civ. 5331 (WK), 1998 WL 47830, at *3 (S.D.N.Y. Feb. 5, 1998) (collecting cases);[6] but see JPMorgan Chase Bank v. Liberty Mutual Insurance Co., 189 F.Supp.2d 24, 27-28 (S.D.N.Y. 2002).

The Court concludes that the assertion of the Third Claim for Relief, the fraud in in the inducement claim, would be futile as to this unambiguous, absolute, unconditional and irrevocable multimillion-dollar guarantee entered into by sophisticated parties and expressly containing an irrevocable waiver of defenses relating to validity and enforcement, as well as a defense based on any circumstance, including reliance upon representations of TRIGO that altered Clarke's exposure under the guarantee.

V.  AS AN ALTERNATIVE GROUND FOR FUTILITY OF THE PROPOSED SECOND AND THIRD CLAIM FOR RELIEF, THEY FAIL TO ALLEGE FRAUD WITH THE PARTICULARITY REQUIRED BY RULE 9(B).

The Court also considers defendants' argument that the two fraud-in-the inducement claims are futile because they do not allege fraud with the requisite particularity. The Court agrees and also bases its futility conclusion for both the Second and Third Claims for Relief on this alternate ground.

Rule 9(b), Fed. R. Civ. P., requires that a fraud-based claim be alleged with particularity. The rule applies to a fraud-in-the inducement claim, and a failure to satisfy the rule

---

[6] The National Westminster case distinguished its facts from those of Yanakas in a manner that applies equally to this case:
> The Yanakas panel cited three significant differences between the valid and invalid waivers. First, it found the Yanakas guaranty to be a "generalized boilerplate exclusion" which the bank used routinely. 7 F.3d at 317. Second, and in its opinion "more importantly", the Yanakas guaranty did not purport to waive any defenses to its own validity. Id. Third, the Yanakas guaranty had no blanket disclaimer of the type found in Plapinger, as to "any other circumstance which might otherwise constitute a defense" to the guaranty. None of these deficiencies exist in the instrument before us.

1998 WL 47830, at *3 (S.D.N.Y. Feb. 5, 1998).

may serve as the basis for the concluding that a proposed amendment would be futile. In re IBM Arbitration Agreement Litigation, 76 F.4th 74, 87 (2d Cir. 2023). Rule 9(b) "is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvent charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) (quoting Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990)).

"[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." In re IBM Arbitration Agreement Litigation, 76 F.4th at 87 (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)). Plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290 (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)). This "strong inference" may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. at 290-91 (internal quotation omitted).[7]

The fraud in the inducement claim addressed to the PSA makes sweeping allegations of false representations without anchoring them to any particular speaker. (PAC ¶¶ 106-108) ("Each of these representations by Defendants were false."). The same is equally true of the fraud-in-the inducement claim directed to the guarantee. (PAC ¶¶ 117-119) ("These statement by Defendants were knowingly and intentionally false.") Defendants are defined in the proposed pleading as including TRIGO, headquartered in Shelby Township, Michigan (PAC

---

[7] The Court does not reach whether a strong inference of fraud has been plausibly alleged.

14

¶ 17), Rambaud and Marquis, each of whom are alleged to reside in either France or Toronto, Canada. (Id. ¶¶18-19.) The general rule that the identity of the person making a false representation must be specifically alleged has a limited exception under the group pleading doctrine applicable to "group-published document" such as prospectus, registration statement, offering memorandum or proxy statement.[8] Reviewing the proposed claim, the limited exception for collective work product has no application to statements in private settings made to Clarke or his company.

The sweeping time period covered by the Proposed Amended Complaint makes the failure to set forth the time and place of specific representations a fatal defect in the pleading. (See, e.g., PAC ¶106 c, d & e.) Plaintiffs contend that they were wooed by TRIGO as early as March 2018, signed a letter of intent on May 9, 2018, executed the PSA on August 10, 2018, closed the transaction in January 2019 and formally amended the PSA five times, as late as December 10, 2020. PAC ¶106 c, d & e do not identify whether the representation was made in a face-to-face meeting, a letter, a phone call, a video meeting or in some other means of communication.

The Second and Third Claims for Relief fail to allege fraud with the particularity required by Rule 9(b) and their assertion in the Proposed Amended Complaint would be futile.

---

[8] See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 173 (2d Cir. 2015); Adelphia Recovery Trust v. Bank of America, N.A., 624 F. Supp. 2d 292, 315 (S.D.N.Y. 2009) (group pleading is "a limited exception [] allowed where defendants have collaborated on or approved a document together and the document is the basis for the liability.")

CONCLUSION

The motion to amend is GRANTED in part, i.e. to the extent that plaintiffs are granted leave to file an amended complaint asserting the First Claim for Relief for Breach of Contract against TRIGO as tendered to this Court in ECF 50-1 provided that the amended complaint is filed in seven days. Defendant shall answer within 14 days of filing. The motion to amend is otherwise DENIED.

The Clerk is directed to terminate the motion. (ECF 48.)

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 16, 2023